## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Metalcraft of Mayville, Inc.,
d/b/a Scag Power Equipment

       Plaintiff,

    v.                                    Case No. <u>25-2031</u>

Merit Hardware Inc.,

       Defendant,

## COMPLAINT

Plaintiff Metalcraft of Mayville, Inc. d/b/a Scag Power Equipment ("Scag"), for its complaint against defendant Merit Hardware Inc. ("Merit"), alleges as follows:

### Parties

1.    Plaintiff Metalcraft of Mayville, Inc. is a Wisconsin corporation with its principal place of business located at 1000 Metalcraft Drive, Mayville, Wisconsin 53050.

2.    Scag Power Equipment is a division of Metalcraft of Mayville and engaged in the manufacture and sale of lawn maintenance equipment.

3.    Defendant Merit Hardware Inc. is a Connecticut corporation with its principal place of business at 70 Huntington Turnpike, Bridgeport, CT 06610. Merit Hardware Inc. is an equipment store and on information and belief, a manufacturer and importer of lawn maintenance equipment.

### Nature of Action

4.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*.

5.      Scag is the owner of all right, title and interest in U.S. Patent 11,957,079 ("the

'079 Patent") entitled *Stand-On Blower,* issued on April 16, 2024.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

8.      Upon information and belief, Merit resides in this District, regularly conducts

business in this District, has a regular and established place of business in Bridgeport,

Connecticut, and has sold and/or offered for sale blowers that infringe the '079 patent in this

District.

## BACKGROUND

9.      In and around 2019, the named inventors of the '079 patent, James Hall and Craig

Antonioni developed a stand-on blower that delivers an airflow for pneumatic cleanup tasks in

different directions.

10.     The inventors assigned their rights to the '079 patent to Metalcraft of Mayville

Inc. Metalcraft therefore owns all right and title to the '079 patent.

11.     On information and belief, at least as early as June of 2025, Merit began offering

for sale and selling the Merit Maniac Cyclone blower.  Sometime thereafter, Merit began selling

the Merit Razor Cyclone blower.

12.     On June 26, 2025, Scag's counsel sent a letter to Merit, informing Merit that it its

offer for sale and sale of the Merit Manic Cyclone blower was infringing Scag's intellectual

property rights.

13.    As such, at least as early as June 26, 2025, Merit knew that it was infringing the '079 patent.

14.    Despite this notification, Merit has continued to import, manufacture, use, offer to sell, and/or sell the Merit Maniac Cyclone and the Merit Razor Cyclone blowers.

## COUNT I – PATENT INFRINGEMENT OF THE '079 PATENT

15.    Scag realleges and incorporates by reference the allegations in paragraphs 1 through 14 above.

16.    Merit has manufactured, imported, used, sold and/or offered to sell both the Merit Razor Cyclone and the Merit Maniac Cyclone blowers (collectively the "Infringing Merit Blowers").

17.    Merit knew Scag's had a patent on a stand-on blower at least early as June 26, 2025, through a cease-and-desist letter sent by Scag's counsel to Merit on that date.  This cease-and-desist letter explicitly warned Merit of Merit's infringing behavior via its sale, offer for sale, importation, and/or manufacture of the Merit Maniac Cyclone blower (the "Merit Maniac").

18.    In response to Scag's letter, counsel for Merit, Matthew Rankin, responded on July 13, 2025, stating that the Merit Maniac was discontinued and was no longer being marketed.

19.    Given this purported discontinuation, Scag's counsel responded on September 25, 2025, demanding that all references to the Merit Maniac be removed from Merit's website and social media postings.

20.    Scag also demanded that Merit halt the promotion marketing, offering for sale, selling, importing, and/or making a new product known as the Razor Cyclone ZTS which also infringed the '079 patent.

21.    Merit, via its counsel, has refused to comply with Scag's demands.

22.     In view of Merit's continued offering for sale, selling, using, importing, and/or making of the Merit Razor Cyclone ZTS and the Merit Maniac, Merit has willfully infringed the '079 patent.

**Exemplary claim for the Merit Maniac Cyclone for the '079 patent**

23.     Merit has manufactured, sold, and/or offered to sell a product that infringes the '079 patent either literally or under the doctrine of equivalents.  Below is a comparison of claim 21 of the '079 patent (an independent claim) with the Merit Maniac, demonstrating infringement.

24.     Claim 21 of the '079 patent is directed to a stand-on blower. As shown in the picture of the Merit Maniac below, the Merit Maniac is a blower that a user stands on while using.



25.     Claim 21 requires that the blower comprises a chassis that includes a frame.

26.     As shown in the image below, the Merit Maniac has a chassis that includes a frame.



Chassis includes a frame

Chassis

27.    Claim 21 further requires that the blower have an engine mounted to the frame.

28.    As shown in the image above, the Merit Maniac has an engine mounted to the frame.



Engine mounted to frame

Frame

29.    Claim 21 also requires that the blower comprise a pair of drive wheels supported by the frame and selectively receiving power from the engine for moving the stand-on blower.

30.    As shown in the image below, the Merit Maniac has a pair of drive wheels supported by the frame which selectively receive power from the engine to move the machine.



Stand-on blower

Frame

Drive shafts

A pair of drive wheels supported by the frame selectively receive power from the engine via drive shafts for moving the stand-on blower

31.    Claim 21 requires that the blower have a pair of casters pivotally attached to the frame.

32.    As shown in the image below, the Merit Maniac has a pair of castors pivotally attached to the frame.



Frame

Pair of casters pivotally attached to frame

33.    Claim 21 requires that each caster define a pivot axis at a respective attachment location.

34.    As shown in the image below, the Merit Maniac's casters each define a pivot axis at their respective locations.



35.     Claim 21 further requires a riding platform mounted to the frame upon which an operator stands during use of the stand-on blower.

36.     As shown in the image below, the Merit Maniac includes a platform for a user to ride on while the Merit Maniac is in use.



37.     Claim 21 further requires a blower system.

38.     As shown in the image below, the Merit Maniac includes a blower system.



Blower system

39.     Claim 21 requires that the blower system include an impeller housing that surrounds an impeller to direct a volume of air that is accelerated by the impeller in a downstream direction through the blower system.

40.     As shown in the image below, the Merit Maniac's blower system includes a housing that surrounds an impeller to direct air flow for a volume of air that is accelerated by the impeller downstream throughout the blower system.



Impeller housing surrounds impeller (obscured by housing)



41.     Claim 21 requires a housing outlet duct that extends between the impeller housing and an outlet nozzle.

42.     As shown in the image below, the Merit Maniac has a housing outlet duct that extends between the impeller housing and the outlet nozzle.



43.     Claim 21 requires that the housing outlet duct extend angularly forward from the impeller housing.

44.    As shown in the image below, the Merit Maniac's housing outlet duct extends angularly forward from the impeller housing.



45.    Claim 21 further requires a housing outlet duct inlet end connected to and receiving airflow from the impeller housing.

46.    As shown in the image below, the Merit Maniac possesses a housing outlet duct inlet end that is connected to the impeller housing and receives airflow from it.



47.     Claim 21 further requires a housing outlet duct outlet end arranged forward of the housing outlet duct inlet end and the impeller housing.

48.     As shown in the image below, the Merit Maniac has a housing outlet duct outlet end that is arranged in front of (forward) of the housing outlet duct inlet end and the impeller housing.



49.     Claim 21 further requires that the housing outlet duct outlet end define a downwardly facing opening.

50.     As shown in the image below, the Merit Maniac's housing outlet duct outlet end defines a downward face opening.



51.     Claim 21 requires that the outlet nozzle define an inlet end with an upwardly-facing opening that receives the airflow from the downwardly-facing opening of the housing outlet duct.

52.     As shown in the image below, the Merit Maniac's outlet nozzle defines an inlet end with an upward-facing opening that receives airflow from the downward-facing opening of the housing outlet duct.



53.     Claim 21 requires that the outlet nozzle be configured to rotate about a vertical axis that extends through the housing outlet duct downward-facing opening.

54.     As shown in the image below, the Merit Maniac's outlet nozzle is set up so that it rotates about a vertical axis that extends through the housing outlet duct's downward-facing opening.



55.     Claim 21 further requires that the outlet nozzle be configured to rotate about a vertical axis that extends through the outlet nozzle upward-facing opening.

56.     As shown in the image below, the Merit Maniac's outlet nozzle is set up so that it rotates about a vertical axis that extends through the outlet nozzle upward-facing opening.



57.    Finally, claim 21 requires that the outlet nozzle be configured to rotate about a vertical axis that is positioned forward of each of the pivot axes of the pair of casters.

58.    As shown in the image below, the Merit Maniac's outlet nozzle is configured so that it rotates about a vertical axis that is positioned in front of (forward) of each of the pair of casters' pivot axes.



59.    The Merit Maniac thus infringes claim 21 of the '079 patent either literally or under the doctrine of equivalents.


**Exemplary claim for the Merit Razor Cyclone for the '079 patent**

60.    Merit has manufactured, imported, used, sold, and/or offered to sell the Razor Cyclone ZTS, a stand-on blower that infringes the '079 patent either literally or under the doctrine of equivalents.  Below is a comparison of claim 21 of the '079 patent (an independent claim) with the Merit Razor Cyclone ZTS (the "Merit Razor"), demonstrating infringement.

61.    Claim 21 of the '079 patent is directed to a stand-on blower.  As shown in the picture of the Merit Razor below, the Merit Razor is a blower that a user stands on while using.



62.    Claim 21 requires that the blower comprises a chassis that includes a frame.

63.    As shown in the image below, the Merit Razor has a chassis that includes a frame.



64.    Claim 21 further requires that the blower have an engine mounted to the frame.

65.    As shown in the image above, the Merit Razor has an engine mounted to the frame.



66.    Claim 21 also requires that the blower comprise a pair of drive wheels supported by the frame and selectively receiving power from the engine for moving the stand-on blower.

67.    As shown in the image below, the Merit Razor has a pair of drive wheels supported by the frame. Further, the drive wheels receive power from the engine to move the Merit Razor.



68.    Claim 21 requires a pair of casters that are pivotally attached to the frame.

69.     As shown in the image below, the Merit Razor has a castor pair pivotally attached to the frame.



70.     Claim 21 requires that each caster defines a pivot axis at a respective attachment location.

71.     As shown in the image below, the Merit Razor's casters each define a pivot axis at their respective locations.



72.     Claim 21 further requires a riding platform mounted to the frame upon which an operator stands during use of the stand-on blower.

73.     As shown in the image below, the Merit Razor includes a platform for a user to stand on while the Merit Razor is in use.



74.     Claim 21 further requires a blower system.

75.     As shown in the image below, the Merit Razor includes a blower system.



76.     Claim 21 requires that the blower system include an impeller housing that surrounds an impeller to direct a volume of air that is accelerated by the impeller in a downstream direction through the blower system.

77.     As shown in the image below, the Merit Razor's blower system includes a housing that surrounds an impeller to direct air flow for a volume of air that is accelerated by the impeller downstream throughout the blower system.



78.     Claim 21 requires a housing outlet duct that extends between the impeller housing and an outlet nozzle.

79.     As shown in the image below, the Merit Razor has a housing outlet duct that extends between the impeller housing and the outlet nozzle.



80.    Claim 21 requires that the housing outlet duct extend angularly forward from the impeller housing.

81.    As shown in the image below, the Merit Razor's housing outlet duct extends angularly forward from the impeller housing.



82.    Claim 21 further requires a housing outlet duct inlet end connected to and receiving airflow from the impeller housing.

83.    As shown in the image below, the Merit Razor possesses a housing outlet duct inlet end that is connected to the impeller housing and receives airflow from it.



84.     Claim 21 further requires a housing outlet duct outlet end arranged forward of the housing outlet duct inlet end and the impeller housing.

85.     As shown in the image below, the Merit Razor has a housing outlet duct outlet end that is arranged in front of (forward) of the housing outlet duct inlet end and the impeller housing.



86.     Claim 21 further requires that the housing outlet duct outlet end define a downwardly facing opening.

87.    As shown in the image below, the Merit Razor's housing outlet duct outlet end defines a downward face opening.



88.    Claim 21 requires that the outlet nozzle define an inlet end with an upwardly-facing opening that receives the airflow from the downwardly-facing opening of the housing outlet duct.

89.    As shown in the image below, the Merit Razor's outlet nozzle defines an inlet end with an upward-facing opening that receives airflow from the downward-facing opening of the housing outlet duct.



90.    Claim 21 requires that the outlet nozzle be configured to rotate about a vertical axis that extends through the housing outlet duct downward-facing opening.

91.    As shown in the image below, the Merit Razor's outlet nozzle is set up so that it rotates about a vertical axis that extends through the housing outlet duct's downward-facing opening.



92.    Claim 21 further requires that the outlet nozzle be configured to rotate about a vertical axis that extends through the outlet nozzle upward-facing opening.

93.    As shown in the image below, the Merit Razor's outlet nozzle is set up so that it rotates about a vertical axis that extends through the outlet nozzle upward-facing opening.



94.    Finally, claim 21 requires that the outlet nozzle be configured to rotate about a vertical axis that is positioned forward of each of the pivot axes of the pair of casters.

95.    As shown in the image below, the Merit Razor's outlet nozzle is configured so that it rotates about a vertical axis that is positioned in front of (forward) of each of the pair of casters' pivot axes.



96.    Thus, the Merit Razor infringes claim 21 of the '079 patent either literally or under the doctrine of equivalents.

97.    The actions by Merit have caused and are causing irreparable harm and damage to Scag which actions are willful and with malice.

98.    Scag has no adequate remedy at law and is entitled to a preliminary and a permanent injunction enjoining Merit from further violation of Scag's rights.

## **SUMMARY**

99.    Merit has directly infringed the '079 patent by making, importing, using, selling, and/or offering to sell the Merit Razor and the Merit Maniac under 35 U.S.C. § 271.

100.    Merit was aware of the '079 patent prior to the filing of this lawsuit.

101.    Upon information and belief, Merit knew that the making, importing, using, selling, and/or offering to sell the Merit Razor would infringe the '079 patent.

102.    Upon information and belief, Merit has been and is willfully infringing the '079 patent.

103.    Merit will continue to manufacture, import, use, sell, and/or offer for sale at least the Merit Razor and the Merit Maniac unless enjoined from doing so, causing Scag irreparable harm.

104.    Merit's conduct shows a lack of the required duty to avoid infringement of the '079 patent such that this is an exceptional case; therefore, Scag should be awarded its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

105.    Pursuant to 35 U.S.C. § 284, Scag is entitled to enhanced damages for Merit's willful infringement of the '079 patent, up to treble damages.

106.    Pursuant to 35 U.S.C. § 283, Scag is entitled to a preliminary and permanent injunction against further infringement of the '079 patent by Merit.

107.    Merit's false and misleading acts and infringing activity have and will continue to cause irreparable and monetary harm to Scag unless enjoined.


**Request for Relief**

WHEREFORE, Plaintiff Scag Power Equipment demands that judgment be entered in its favor and against Merit Hardware Inc. as follows:

A.    Adjudging that Merit has infringed the '079 patent;

B.    Adjudging that Merit's patent infringement is and has been willful;

C.      Preliminarily and permanently enjoining Merit and all those in active concert therewith, from infringing the '079 patent;

D.      Awarding Scag its actual and statutory damages (including at least a reasonable royalty), multiples thereof, together with prejudgment interest, caused by Merit's patent infringement;

E.      Awarding Scag enhanced and/or punitive damages, attorneys fees and costs; and

F.      Granting such other and further relief as the Court may deem appropriate.

## Jury Demand

Plaintiff Scag Power Equipment hereby demands a jury trial of all issues of fact not admitted by the Defendant.

Dated: December 8, 2025                    Respectfully submitted,

_/s/ John L. Cordani, Jr._
John L. Cordani, Jr. (ct28833)
Robinson & Cole LLP
One State Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
jcordani@rc.com

s/Adam L. Brookman
Adam L. Brookman
(pending pro hac vice application)
BOYLE FREDRICKSON, S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
Telephone:  414-225-9755
Facsimile:  414-225-9753